1   SUSAN E. BASINGER, ESQ. (Bar No. 140864)
    basinger@higgslaw.com
2   HIGGS, FLETCHER & MACK LLP
    401 West "A" Street, Suite 2600
3   San Diego, CA 92101-7913
    TEL: 619.236.1551
4   FAX: 619.696.1410

5   Attorneys for Defendant
    NORTH AMERICAN COMPANY FOR
6   LIFE AND HEALTH INSURANCE

7

FILED

2008 MAY 28  PM 2:45

CLERK US DIST. COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____KMH_____DEPUTY

8                   UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10  LYLE W. HUNTER,                     CASE NO. '08 CV 0939 DMS NLS

11                      Plaintiff,       NOTICE OF REMOVAL OF
                                         ACTION UNDER 28 U.S.C.
12  v.                                   SECTIONS 1441 AND 1446
                                         (DIVERSITY)
13  NORTH AMERICAN COMPANY
    FOR LIFE AND HEALTH
14  INSURANCE, an Illinois Corporation,
    and DOES 1-50, inclusive,
15
                        Defendants.
16

17  TO THE CLERK OF THE ABOVE-ENTITLED COURT:

18        PLEASE TAKE NOTICE THAT defendant NORTH AMERICAN

19  COMPANY FOR LIFE AND HEALTH INSURANCE ("NACOLAH") hereby

20  removes to this Honorable Court the state court action described below.

21                           **JURISDICTION**

22        1.    Prior to April 29, 2008, an action was commenced in the Superior

23  Court of the State of California for the County of San Diego, entitled *Lyle W.*

24  *Hunter v. North American Company for Life and Health Insurance, an Illinois*

25  *Corporation, and Does 1-50, inclusive,* Case No. 37-2008-00080032-CU-BC-CTL.

26        2.    A summons and the Complaint were served on defendant on or after

27  April 29, 2008.

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

860387.1                                                      Case No.

1    3.    A true and correct copy of the summons and Complaint and all other

2    papers served on defendant are attached hereto and no other pleadings or orders

3    have been served upon this defendant in the said state court action.

4    4.    This action is a civil action over which this court has original

5    jurisdiction under 28 U.S.C. §1332, and may be removed to this Court by defendant

6    pursuant to the provisions of 28 U.S.C. §1441 and §1446, in that it is a civil action

7    in which the matter in controversy exceeds the sum of $75,000, exclusive of interest

8    and costs, and is between citizens of different states.

9    5.    Plaintiff is a citizen and resident of the State of California; defendant is

10    a corporation incorporated under the laws of the State of Iowa and has its principal

11    place of business in Chicago, Illinois.

12    6.    Plaintiff seeks recovery of a $75,000 life insurance death benefit

13    allegedly payable under defendant's Policy Number 6278301218 (first cause of

14    action of the Complaint) and unspecified general, consequential, and punitive

15    damages for alleged bad faith, fraudulent, and intentionally malicious conduct

16    (second cause of action in the Complaint).

17    DATED:  May 28, 2008                    HIGGS, FLETCHER & MACK LLP

18

19                                    By Susan E. Basinger

20                                    SUSAN E. BASINGER
                                     Attorneys for Defendant
21                                    NORTH AMERICAN COMPANY
                                     FOR LIFE AND HEALTH
22                                    INSURANCE

23

24

25

26

27

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

860387.1                              2                              Case No.

1   SUSAN E. BASINGER, ESQ. (Bar No. 140864)
    basinger@higgslaw.com
2   HIGGS, FLETCHER & MACK LLP
    401 West "A" Street, Suite 2600
3   San Diego, CA 92101-7913
    TEL: 619.236.1551
4   FAX: 619.696.1410

5   Attorneys for Defendant
    NORTH AMERICAN COMPANY FOR
6   LIFE AND HEALTH INSURANCE

7

8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10  LYLE W. HUNTER,                        CASE NO. '08 CV 0939 DMS **NLS**

11                    Plaintiff,           **LODGMENT OF STATE COURT FILE**

12  v.

13  NORTH AMERICAN COMPANY
    FOR LIFE AND HEALTH
14  INSURANCE, an Illinois Corporation,
    and DOES 1-50, inclusive,
15
                      Defendants.
16

17        Defendant North American Company for Life and Health Insurance hereby

18  lodges with the court a true and correct copy of the state court file in this matter,

19  Superior Court of California, County of San Diego, Case No. 37-2008-00080032-
20  CU-BC-CTL.
21  DATED:  May 28, 2008                    HIGGS, FLETCHER & MACK LLP
22

23                                         By: _Susan E. Basinger_
24                                            SUSAN E. BASINGER
                                              Attorneys for Defendant
25                                            NORTH AMERICAN COMPANY
                                              FOR LIFE AND HEALTH
26                                            INSURANCE

27

28

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS:  330 West Broadway | |
| MAILING ADDRESS:  330 West Broadway | 4/29/08 |
| CITY AND ZIP CODE:  San Diego, CA 92101 | 2:15 |
| BRANCH NAME:  Central | |
| TELEPHONE NUMBER:  (619) 685-6025 | |

PLAINTIFF(S) / PETITIONER(S):  Lyle W Hunter

DEFENDANT(S) / RESPONDENT(S):  North American Company for Life and Health Insurance

HUNTER VS. NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER: |
|---|---|
| | 37-2008-00080032-CU-BC-CTL |

Judge:  Joan M. Lewis                                              Department: C-65

COMPLAINT/PETITION FILED: 03/14/2008

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

SDSC CIV-721 (Rev. 11-06)                    NOTICE OF CASE ASSIGNMENT                    Page: 1



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2008-00080032-CU-BC-CTL       CASE TITLE: Hunter vs. North American Company for Life and Health Ins

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

## ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial

## ADR OPTIONS

1) CIVIL MEDIATION PROGRAM: The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non-binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

2) JUDICIAL ARBITRATION: Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

3) **SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

4) **OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827 | |
| BRANCH NAME: Central | |

| PLAINTIFF(S): Lyle W Hunter |
|---|
| DEFENDANT(S): North American Company for Life and Health Insurance |
| SHORT TITLE:   HUNTER VS. NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER:<br>37-2008-00080032-CU-BC-CTL |
|---|---|

Judge: Joan M. Lewis                                             Department: C-65

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program          ☐ Court-Ordered Nonbinding Arbitration

☐ Private Neutral Evaluation                ☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Mini-Trial                        ☐ Private Reference to General Referee

☐ Private Summary Jury Trial                ☐ Private Reference to Judge

☐ Private Settlement Conference with Private Neutral   ☐ Private Binding Arbitration

☐ Other (specify): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____          Date: _____

_____             _____
Name of Plaintiff                                Name of Defendant

_____             _____
Signature                                        Signature

_____             _____
Name of Plaintiff's Attorney                     Name of Defendant's Attorney

_____             _____
Signature                                        Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

IT IS SO ORDERED.

Dated: 03/14/2008

_____
JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 01-07)

**STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**                Page: 1

3

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
NORTH AMERICAN COMPANY FOR
LIFE AND HEALTH INSURANCE, an Illinois Corporation
and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
LYLE W. HUNTER

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Diego Superior Court<br>330 W. Broadway, San Diego, CA 92101 | CASE NUMBER:<br>*(Número del Caso):* 37-2008-00080032-CU-BC-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Dena M. Acosta, Esq.          (760) 633-4060
914-A N. Coast Highway 101, Encinitas, CA 92024

| DATE:<br>*(Fecha)* MAR 1 4 2008 | Clerk, by _____ , Deputy<br>*(Secretario)*                      *(Adjunto)* |
|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* NorTh AMerican Company For Life And Health Insurance, An Illinois Corporation

under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☒ by personal delivery on *(date):* 4/29/08

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev January 1, 2004] | Page 1 of 1<br>Code of Civil Procedure §§ 412.20, 465 |

**SUMMONS**

1  Anton C. Gerschler, Esq.  Bar No. 098682
   Dena M. Acosta, Esq. Bar No. 169719
2  North County Law Firm
   914-A North Coast Highway101
3  Encinitas, CA 92024
   Phone (760) 633-4060; Fax (760) 633-4066
4
   Attorneys for Plaintiff Lyle W. Hunter
5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY SAN DIEGO

10  LYLE W. HUNTER,                    )  CASE NO.:  37-2008-00080032-CU-BC-CTL
                                       )
11            Plaintiff,               )
                                       )  COMPLAINT FOR:
12  v.                                 )
                                       )  1. BREACH OF CONTRACT
13  NORTH AMERICAN COMPANY FOR         )
    LIFE AND HEALTH INSURANCE,         )  2. BREACH OF THE COVENANT OF
14  an Illinois Corporation            )     GOOD FAITH AND FAIR DEALING
    and DOES 1-50, inclusive,          )
15            Defendants.              )  3. DECLARATORY RELIEF
                                       )
16

17        Plaintiff LYLE W. HUNTER, (hereinafter "PLAINTIFF") by and through his attorneys,

18  does hereby allege upon information and belief as follows:

19                        <u>GENERAL ALLEGATIONS</u>

20        1.     Venue is proper here because the actions giving rise to defendants' liability,

21  as alleged in this complaint, occurred in the County of San Diego, State of California.

22        2.     This is a general jurisdiction matter as the amount in controversy exceeds

23  $25,000.

24        3.     At all times relevant to this matter, Plaintiff LYLE W. HUNTER has been an

25  individual residing in the County of San Diego, State of California.

26        4.     Defendant NORTH AMERICAN COMPANY FOR LIFE AND HEALTH

27  INSURANCE, an Illinois corporation ("NACOLAH") is and at all times herein mentioned was

28

                                    1
                     Complaint of Plaintiff Lyle W. Hunter

1  an insurance company authorized to conduct business in California and was authorized
2  to administer life insurance policies in California.

3      5.    Plaintiff does not now the true names or legal capacities of the defendants
4  sued herein as Does 1 through 50, inclusive, and therefore sues said defendants by such
5  fictitious names.

6      6.    Plaintiff is informed and believes, and thereupon alleges, that each of the
7  defendants designated herein as a Doe is legally responsible in some manner for the
8  matters herein alleged, and is legally responsible in some manner for causing the injuries
9  and damages to plaintiff as hereinafter alleged.

10     7.    Plaintiff is informed and believes and thereupon alleges, that each defendant
11 whether specifically named or designed herein as a Doe, was the agent, representative,
12 servant, employee, principal, joint venturer, co-conspirator, management company and/or
13 representative of each of the remaining co-defendants, and in doing the acts hereinafter
14 alleged, was acting within the course and scope of said agency, employment, joint venture,
15 conspiracy, agreement, management company agreement and/or service with the
16 approval, knowledge, authority, permission and/or consent of the remaining defendants.

## COMMON ALLEGATIONS

17
18     8.    On or about December 3, 1986, plaintiff HUNTER applied with Amoco Life
19 Insurance Company for a universal life insurance policy insuring himself as the primary
20 insured and his then wife Vicki Jo Hunter as a secondary insured. The application was
21 approved and on February 19, 1987 Amoco issued a policy bearing policy number
22 6278301218 insuring plaintiff HUNTER for $100,000 and Vicki Jo Hunter for $75,000.
23 NACOLAH subsequently assumed responsibility for the policy after a merger with Amaco.
24 A copy of the insurance policy and NACOLAH's Certificate of Assumption is attached
25 hereto respectively as Exhibits A and B.

26     9.    On February 18, 1998 a judgment of dissolution was entered in San Diego
27 Superior Court dissolving the marriage of the Plaintiff and Vicki Jo Hunter.

28

2

Complaint of Plaintiff Lyle W. Hunter

10.    On December 6, 2006, while the insurance policy was in full force and effect, the secondary insured Vicki Jo Hunter was murdered (the perpetrator was subsequently arrested).

11.    Prior to the death of the Vicki Jo Hunter, all premiums due had been paid and both plaintiff and the secondary insured had performed all of their obligations under the policy.

12.    Plaintiff made a proper and timely claim for the benefits due under the aforementioned life insurance policy.

13.    Defendant denied the claim on March 15, 2007 contending that because the secondary insured was no longer the spouse of plaintiff, the coverage terminated. Defendant has refused to pay the death benefit of $75,000, claiming that the insurer's only obligation is a refund of the premium payments made on the policy since the marital dissolution.

**FIRST CAUSE OF ACTION**

14.    Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 13 of this complaint, and incorporates same by reference as though fully set forth herein.

15.    Plaintiff has duly performed each and every condition of the policy of insurance issued by defendant under which he is obligated to perform.

16.    Defendant NACOLAH breached it's obligation under the insurance contract with plaintiff, in that it has failed and refused to pay the policy benefits.

17.    As a direct and proximate result of defendant's breach of its contractual duties, plaintiff has been denied the benefits of the policy and has incurred attorney's fees and costs to obtain said benefits.

**SECOND CAUSE OF ACTION**

18.    Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 13 of this complaint, and incorporates same by reference as though fully set forth herein.

19.     Defendant, at all times relevant herein, knew, or in the exercise of good faith, reasonably should have known, that plaintiff was legally entitled to recover the death benefit under the aforementioned insurance policy on the life of the Vicki Jo Hunter and that the Defendant was obligated to provide plaintiff the benefits under the insurance policy.

20.     Defendant further knew, or in the exercise of good faith, reasonably should have known, that the policy benefit was due the plaintiff, but nevertheless, intentionally, wrongfully, and unreasonably refused and failed to pay the benefits of the policy to plaintiff.

21.     As a proximate result of defendant's wrongful conduct, plaintiff has been denied receipt of his lawful insurance policy benefits.

22.     Defendant's actions in withholding and refusing to pay the policy benefits were unreasonable and in bad faith.

23.     Plaintiff is informed and believes and thereon alleges that defendant's actions were part of a practice of defendant which is designed, among other things, to wrongfully withhold payment of claims with the intent of ignoring the interest of their insured and/or the beneficiaries of their insureds.

24.     As a direct and proximate result of defendant's wrongful conduct, plaintiff has sustained injury and damages in an amount to be proven at the time of trial.

25.     Additionally, in committing the aforementioned acts, defendants acted with oppression, fraud and malice with the intent to willfully injure, harass, vex and annoy plaintiff with a conscious disregard for plaintiff's rights. All of the aforementioned acts were done or ratified by defendant's management-level employees, who acted with knowledge that defendant's conduct would cause plaintiff harm.  Plaintiff is therefore entitled to recover punitive damages.

**THIRD CAUSE OF ACTION**

26.     Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 13 of this complaint, and incorporates same by reference as though fully set forth herein.

27.    On February 19, 1987, defendant's predecessor issued a universal life insurance policy, the terms of which required the payment of death benefits to the primary insured upon the death of the secondary insured.

28.    An actual controversy now exists between plaintiff and defendant concerning their respective rights, duties, and obligations under the policy, in that defendant contends that the policy benefits for the secondary insured terminated upon the dissolution of the insured's marriage, and plaintiff asserts that there is no provision in the policy which terminated coverage for the secondary insured upon a marital dissolution and he is therefore entitled to the payment of death benefits arising from the death of the secondary insured.

29.    Plaintiff desires a judicial determination and declaration of the parties' respective rights, duties and obligations under the policy in question, and specifically that coverage for the secondary insured did not terminate upon the marital dissolution of the insureds.

WHEREFORE, plaintiff prays for judgment against defendant as follows:

## FIRST CAUSE OF ACTION

1.    Benefits due under the insurance policy;

2.    Consequential damages in a sum according to proof;

3.    For attorneys' fees in an amount according to proof

4.    For prejudgment interest;

5.    For costs of suit and for such other and further relief as the court deems proper.

## SECOND CAUSE OF ACTION

1.    General damages in a sum according to proof;

2.    Benefits due under the insurance policy;

3.    Consequential damages in a sum according to proof;

4.    Punitive damages;

5.    For attorneys' fees according to proof

6.    For prejudgment interest;

5

Complaint of Plaintiff Lyle W. Hunter

1

### THIRD CAUSE OF ACTION

2   1.   A declaration of the parties' respective rights, duties and obligations under the

3   policy at issue;

4   2.   A declaration that coverage under the policy for the secondary insured did not

5   terminate upon dissolution of the insured's marriage;

6

7   Dated: March 14, 2008

8   Dena M. Acosta, Esq.
Attorney for Plaintiff Lyle W. Hunter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A



## AMOCO LIFE INSURANCE COMPANY

Omaha, Nebraska

a Stock Company

Primary Insured   〔illegible〕                    〔illegible〕    Policy Number

Plan of Insurance   〔illegible〕

Policy
Effective Date   〔illegible〕

Mailing Address   〔illegible〕

This policy provides Adjustable Life Insurance payable at death. Premiums are flexible. The death benefit is adjustable. Riders, if any, are listed on Page 3. No dividends are payable.

# ADJUSTABLE
# Life Insurance Policy

Amoco Life Insurance Company will pay the death benefit of this policy to the beneficiary immediately upon receipt at the Home Office of proof that an Insured's death occurred while this policy was in force.

We will pay the cash value of this policy to the owner on the maturity date if the Primary Insured is then living and this policy is in force.

## THIS IS A LEGAL CONTRACT BETWEEN THE POLICYOWNER AND AMOCO LIFE.

### READ YOUR POLICY CAREFULLY.



**AMOCO LIFE INSURANCE COMPANY**

Home Office:
306 South 15th Street
Omaha, Nebraska 68102

It includes the provisions on the following pages.

If you are not satisfied with your policy, return it to us within 30 days after the effective date. The premium paid will be refunded within 10 days after we received notice of cancellation and your policy will be void.

## Non-Participating

THIS POLICY PROVIDES FOR A GUARANTEED BASIS OF CASH VALUES. THE BASIS MAY BE MADE MORE FAVORABLE AT OUR OPTION.

_President_

_Secretary_

Form AL517C—3/83

## Table of Contents

| | Page |
|---|---|
| POLICY SCHEDULE | 3 |
| COST OF INSURANCE AND PAID-UP WHOLE LIFE TABLE | 5 |
| DEFINITIONS | 6 |
| GENERAL PROVISIONS | |
| 1. The Contract | 6 |
| 2. Incontestability | 6 |
| 3. Misstatement of Age or Sex | 6 |
| 4. Policy Dates | 6 |
| 5. Change of Maturity Date | 6 |
| 6. Nonparticipation | 6 |
| EXCLUSION | |
| 7. Suicide | 7 |
| POLICYOWNER AND BENEFICIARY | |
| 8. Ownership | 7 |
| 9. Assignments | 7 |
| 10. Beneficiary | 7 |
| 11. Beneficiary Change | 7 |
| PREMIUMS AND REINSTATEMENT | |
| 12. Consideration | 7 |
| 13. Initial Premium | 7 |
| 14. Planned Periodic Premiums | 7 |
| 15. Unscheduled Premiums | 8 |
| 16. Grace Period | 8 |
| 17. Termination | 8 |
| 18. Reinstatement | 8 |
| DEATH BENEFIT AND DEATH BENEFIT OPTIONS | |
| 19. Death Benefit | 8 |
| 20. Death Benefit Changes | 8 |
| 21. Insurance For Secondary Insured | 9 |

| | Page |
|---|---|
| POLICY VALUES | |
| 22. Net Premium | 9 |
| 23. Cash Value | 9 |
| 24. Monthly Deduction | 9 |
| 25. Interest Rate | 9 |
| 26. Cost of Insurance | 9 |
| 27. Cost of Insurance Rate | 10 |
| 28. Annual Report | 10 |
| 29. Basis of Computations | 10 |
| DISCONTINUANCE OF PREMIUMS AND SURRENDER | |
| 30. Special Paid-Up Life Insurance Option | 10 |
| 31. Paid-Up Term Insurance | 11 |
| 32. Surrender | 11 |
| 33. Partial Surrender | 11 |
| CONVERSION PRIVILEGE | |
| 34. Conversion of Insurance on Secondary Insured | 11 |
| LOANS | |
| 35. Policy Loans | 11 |
| 36. Loan Interest | 11 |
| 37. Loan Repayments | 11 |
| OPTIONAL METHODS FOR PAYMENT OF POLICY PROCEEDS | |
| 38. Proceeds | 11 |
| 39. Payment of Proceeds | 12 |
| 40. General Conditions | 12 |
| 41. Methods For Payment | 12 |
| POLICY ATTACHMENTS | Following Page 12 |
| Riders, if any | |
| Amendments and Endorsements, if any | |
| Copy of the Application | |
| TABLE | |
| Lifetime Monthly Income Table | 13 |
| INDEX | Back of Policy |



AMOCO LIFE INSURANCE COMPANY

# AMOCO LIFE INSURANCE COMPAN

PRIMARY INSURED    LYLE WHITE                    92-70255075   POLICY NUMBER

PLAN OF INSURANCE    FLEXIBLE PLUS LIFE INSURANCE

POLICY
EFFECTIVE DATE    MAY 15, 1985

MAILING ADDRESS    LYLE WHITE
9735 PARKSIDE AVE.
SAN DIEGO CA
                    92150

--------------------------------------------------------------------

PRIMARY INSURED        AGE    25        SEX    MALE

    PREMIUM CLASSIFICATION

    INITIAL SPECIFIED AMOUNT          $    29,000.00

    DEATH BENEFIT      GREATER OF SPECIFIED AMOUNT AT TIME OF DEATH OR
    OPTION 1           APPLICABLE PERCENTAGE OF CASH VALUE.
    (THE DEATH BENEFIT IS REDUCED BY THE AMOUNT OF ANY PARTIAL SURRENDER.)

    INITIAL PREMIUM                   $       48.91

    PLANNED PERIODIC PREMIUM          $       48.91   PAYABLE MONTHLY

    MONTHLY DEDUCTION DAY             DAY 15 OF EACH MONTH

    LOAN INTEREST RATE                7.40 % IN ADVANCE

    PERCENTAGE OF PREMIUM CHARGE      7.33 % OF EACH PREMIUM

    FIRST YEAR MONTHLY EXPENSE CHARGE   $      27.60

    RENEWAL YEAR MONTHLY EXPENSE CHARGE  $      4.00 AT ISSUE

    OWNER                            LYLE HUNTER

    MATURITY DATE                    MAY 15, 2052

    COVERAGE MAY EXPIRE PRIOR TO THE MATURITY DATE IF NO PREMIUMS ARE
    PAID AFTER THE INITIAL PREMIUM OR IF SUBSEQUENT PREMIUMS ARE
    INSUFFICIENT TO CONTINUE COVERAGE TO SUCH DATE.  COVERAGE MAY
    ALSO BE AFFECTED BY A CHANGE IN CURRENT VALUES.

    NUMBER OF SECONDARY INSUREDS    1    COVERAGE SPECIFICATIONS ON NEXT PAGE

--------------------------------------------------------------------

OTHER BENEFITS

| FORM NUMBER | EFFECTIVE DATE | INSURED | BENEFIT | BENEFIT AMOUNT | MONTHLY COST OF BENEFIT |
|---|---|---|---|---|---|
| LR-113 | 05-15-85 | PRIMARY INSURED | TERM LIFE FOR 9 YRS | $ 30000.00 | $ 5.10* |

    * THE MONTHLY COST INCREASES YEARLY AS DESCRIBED IN SECTION 27 ON PAGE 10.

FORM ALS370-0/3/85

* MONTHLY RENEWABLE TERM INSURANCE FOR 65 YEARS *

POLICY FORM OR CERTIFICATE/RIDER          AGE    32    SEX FEMALE
    RATING CLASSIFICATION                 STANDARD
    INITIAL SPECIFIED AMOUNT              $   5,000.
    EFFECTIVE DATE                        MAY      15,1955

03-7525A875

SCHEDULE OF MAXIMUM LIMITS

| POLICY YEAR | MAXIMUM ACCUMULATED PREMIUM PAYMENTS | POLICY YEAR | MAXIMUM ACCUMULATED PREMIUM PAYMENTS | POLICY YEAR | MAXIMUM ACCUMULATED PREMIUM PAYMENTS |
|---|---|---|---|---|---|
| 1 | $ 9954.00 | 12 | $ 9954.00 | 23 | $ 9954.00 |
| 2 | 9954.00 | 13 | 9954.00 | 24 | 9954.00 |
| 3 | 9954.00 | 14 | 9954.00 | 25 | 9954.00 |
| 4 | 9954.00 | 15 | 9954.00 | 26 | 9954.00 |
| 5 | 10315.41 | 16 | 11159.98 | 27 | 11903.55 |
| 6 | 12097.43 | 17 | 13090.69 | 28 | 14284.26 |
| 7 | 15.77 | 18 | 15871.41 | 29 | 16664.97 |
| 8 | 17159.33 | 19 | 18252.11 | 30 | 19045.88 |
| 9 | 19659.54 | 20 | 20632.92 | 31 | 21426.39 |
| 10 | 22313.68 | 21 | 23013.53 | 32 | 23807.10 |
| 11 | 24906.67 | 22 | 25394.24 | 33 | 26187.91 |
| 34 | 26891.58 | 45 | 27774.95 | 35 | 28568.52 |
| 37 | 29302.80 | 46 | 30155.66 | 36 | 30949.23 |
| 42 | 31742.22 | 47 | 32535.37 | 38 | 33329.94 |
| 43 | 34124.51 | 48 | 34917.08 | 39 | 35710.65 |
| 44 | 38503.02 | 49 | 37297.79 | 42 | 38091.36 |
| 48 | 38680.43 | 50 | 39678.56 | 45 | 40472.27 |
| 50 | 41255.49 | 51 | 42059.21 | 49 | 42852.78 |
| 51 | 43036.15 | 52 | 44439.92 | 54 | 45233.49 |
| 56 | 46827.40 | 57 | 45829.90 | 57 | 47614.24 |
| 58 | 48487.77 | 57 | 48291.12 | 60 | 49000.91 |
| 64 | 50794.68 | 65 | 51582.85 | 63 | 52375.62 |
| 67 | 53109.19 | | | | |

THE TOTAL AMOUNT OF UNSCHEDULED PREMIUM PAYMENTS PLUS ALL PLANNED PERIODIC PREMIUMS CAN NOT EXCEED THE MAXIMUM ACCUMULATED PREMIUM PAYMENTS STATED ABOVE.  THERE IS NO LIMIT TO THE NUMBER OF UNSCHEDULED PREMIUM PAYMENTS. INCREASES IN PLANNED PERIODIC PREMIUMS THAT COMPLY WITH THE ABOVE MAXIMUMS WILL BE ACCEPTED.

INTEREST RATE INDEX

THIS POLICY DOES NOT USE AN OUTSIDE INTEREST RATE INDEX.

CONTINGENT DEFERRED SALES CHARGE

THIS POLICY DOES NOT HAVE A CONTINGENT DEFERRED SALES CHARGE.

TABLE OF GUARANTEED POLICY VALUES

BASED ON THE SPECIFIED AMOUNT, DEATH BENEFIT
OPTION SELECTED, AND PAYMENT OF THE PLANNED PREMIUM.

| END OF POLICY YEAR | ATTAINED ISSUE AGE | PLANNED PREMIUM | CASH VALUE | DEATH BENEFIT |
|---|---|---|---|---|
| 1 | 50 | 558.92 | 15.52 | 20000. |
| 2 | 51 | 558.98 | 284.63 | 20000. |
| 3 | 52 | 558.98 | 568.21 | 20000. |
| 4 | 52 | 558.98 | 843.37 | 20000. |
| 5 | 53 | 558.98 | 1133.67 | 20000. |
| 6 | 54 | 558.98 | 1435.57 | 20000. |
| 7 | 55 | 558.98 | 1732.93 | 20000. |
| 8 | 56 | 558.98 | 2039.03 | 20000. |
| 9 | 57 | 558.98 | 2346.32 | 20000. |
| 10 | 58 | 558.98 | 2651.32 | 20000. |
| 11 | 59 | 558.98 | 3048.25 | 20000. |
| 12 | 60 | 558.98 | 3407.73 | 20000. |
| 13 | 61 | 558.98 | 3508.24 | 20000. |
| 14 | 62 | 558.98 | 4248.01 | 20000. |
| 15 | 63 | 558.98 | 4645.59 | 20000. |
| 16 | 64 | 558.98 | 5039.53 | 20000. |
| 17 | 65 | 558.98 | 5427.36 | 20000. |
| 18 | 66 | 558.98 | 5857.29 | 20000. |
| 19 | 67 | 558.98 | 6175.71 | 20000. |
| 20 | 68 | 558.98 | 6529.38 | 20000. |
| 32 | 60 | 558.98 | 7584.75 | 20000. |
| 34 | 62 | 558.98 | 6534.56 | 20000. |
| 37 | 65 | 558.98 | 3557.92 | 20000. |

62-7-256075

FORM HL-5170-03/83

S8 C80 4 1/2%

| Attained Age | | Guaranteed Maximum Monthly Cost of Insurance Rates Per $1,000 | Paid-Up Whole Life Available Per $1.00 Cash Value | Attained Age | | Guaranteed Maximum Monthly Cost of Insurance Rates Per $1,000 | Paid-Up Whole Life Available Per $1.00 Cash Value |
|---|---|---|---|---|---|---|---|
| Male | Female | | | Male | Female | | |
| 0 | 0 | 0.36926 | 13.03215 | 46 | 49 | 0.50810 | 2.90547 |
| 1 | 1 | 0.13669 | 13.14166 | 47 | 50 | 0.55482 | 2.81104 |
| 2 | 2 | 0.12419 | 12.81952 | 48 | 51 | 0.60653 | 2.72079 |
| 3 | 3 | 0.11918 | 12.47729 | 49 | 52 | 0.66366 | 2.63459 |
| 4 | 4 | 0.11459 | 12.13002 | 50 | 53 | 0.72664 | 2.55228 |
| 5 | 5 | 0.11043 | 11.77972 | 51 | 54 | 0.79505 | 2.47374 |
| 6 | 6 | 0.10669 | 11.42821 | 52 | 55 | 0.86931 | 2.39878 |
| 7 | 7 | 0.10376 | 11.07716 | 53 | 56 | 0.95025 | 2.32724 |
| 8 | 8 | 0.10167 | 10.72854 | 54 | 57 | 1.03830 | 2.25896 |
| 9 | 9 | 0.10084 | 10.38407 | 55 | 58 | 1.13470 | 2.19381 |
| 10 | 10 | 0.10168 | 10.04567 | 56 | 59 | 1.24073 | 2.13165 |
| 11 | 11 | 0.10376 | 9.71529 | 57 | 60 | 1.35719 | 2.07238 |
| 12 | 12 | 0.10751 | 9.39409 | 58 | 61 | 1.48455 | 2.01591 |
| 13 | 13 | 0.11293 | 9.08330 | 59 | 62 | 1.62403 | 1.96212 |
| 14 | 14 | 0.11876 | 8.78383 | 60 | 63 | 1.77650 | 1.91090 |
| 15 | 15 | 0.12502 | 8.49535 | 61 | 64 | 1.94238 | 1.86216 |
| 15 | 16 | 0.12502 | 8.49535 | 62 | 65 | 2.12333 | 1.81579 |
| 15 | 17 | 0.12502 | 8.49535 | 63 | 66 | 2.32107 | 1.77169 |
| 15 | 18 | 0.12502 | 8.49535 | 64 | 67 | 2.53768 | 1.72978 |
| 16 | 19 | 0.13168 | 8.21754 | 65 | 68 | 2.77608 | 1.68999 |
| 17 | 20 | 0.13793 | 7.95002 | 66 | 69 | 3.03928 | 1.65225 |
| 18 | 21 | 0.14294 | 7.69193 | 67 | 70 | 3.32978 | 1.61655 |
| 19 | 22 | 0.14710 | 7.44202 | 68 | 71 | 3.64685 | 1.58285 |
| 20 | 23 | 0.15086 | 7.19947 | 69 | 72 | 3.98676 | 1.55108 |
| 21 | 24 | 0.15377 | 6.96381 | 70 | 73 | 4.34500 | 1.52115 |
| 22 | 25 | 0.15627 | 6.73443 | 71 | 74 | 4.71692 | 1.49289 |
| 23 | 26 | 0.15836 | 6.51102 | 72 | 75 | 5.09967 | 1.46612 |
| 24 | 27 | 0.16002 | 6.29331 | 73 | 76 | 5.49760 | 1.44062 |
| 25 | 28 | 0.16211 | 6.08105 | 74 | 77 | 5.92258 | 1.41623 |
| 26 | 29 | 0.16461 | 5.87436 | 75 | 78 | 6.38757 | 1.39287 |
| 27 | 30 | 0.16752 | 5.67328 | 76 | 79 | 6.90619 | 1.37050 |
| 28 | 31 | 0.17127 | 5.47784 | 77 | 80 | 7.49028 | 1.34917 |
| 29 | 32 | 0.17544 | 5.28814 | 78 | 81 | 8.14300 | 1.32896 |
| 30 | 33 | 0.18003 | 5.10414 | 79 | 82 | 8.85700 | 1.30994 |
| 31 | 34 | 0.18503 | 4.92576 | 80 | 83 | 9.62445 | 1.29211 |
| 32 | 35 | 0.19045 | 4.75291 | 81 | 84 | 10.43681 | 1.27543 |
| 33 | 36 | 0.19671 | 4.58550 | 82 | 85 | 11.28617 | 1.25981 |
| 34 | 37 | 0.20462 | 4.42350 | 83 | 86 | 12.17113 | 1.24513 |
| 35 | 38 | 0.21463 | 4.26696 | 84 | 87 | 13.09630 | 1.23128 |
| 36 | 39 | 0.22671 | 4.11598 | 85 | 88 | 14.06747 | 1.21813 |
| 37 | 40 | 0.24213 | 3.97056 | 86 | 89 | 15.09034 | 1.20556 |
| 38 | 41 | 0.26088 | 3.83082 | 87 | 90 | 16.17587 | 1.19345 |
| 39 | 42 | 0.28256 | 3.69680 | 88 | 91 | 17.34343 | 1.18171 |
| 40 | 43 | 0.30716 | 3.56840 | 89 | 92 | 18.62108 | 1.17019 |
| 41 | 44 | 0.33384 | 3.44551 | 90 | 93 | 20.04580 | 1.15881 |
| 42 | 45 | 0.36260 | 3.32788 | 91 | 94 | 21.66244 | 1.14746 |
| 43 | 46 | 0.39386 | 3.21526 | 92 | 95 | 23.52590 | 1.13607 |
| 44 | 47 | 0.42806 | 3.10744 | 93 | 96 | 25.69963 | 1.12450 |
| 45 | 48 | 0.46600 | 3.00422 | 94 | 97 | 28.33894 | 1.11243 |
| | | | | 95 | 98 | 31.87147 | 1.09959 |
| | | | | 96 | 99 | | 1.08570 |

## Definitions

AGE—age last birthday.

BENEFICIARY—the person, persons or entity entitled to receive the death benefit of this policy.

INTEREST—interest compounded yearly.

OUR, US, WE—refers to Amoco Life Insurance Company, 306 South 15th Street, Omaha, Nebraska 68102.

OWNER—A. the Insured,
      B. the applicant if a person other than the Insured applied for this policy, or
      C. the assignee.

PAYEE—the person who receives payments under this policy.

RIDER—a policy provision added to this policy to expand or limit the benefits payable.

YOU, YOUR—refers to the owner of this policy.

## General Provisions

1. THE CONTRACT—The entire contract is:
   A. this policy,
   B. any riders, and
   C. the signed application (and any supplemental applications for additional specified amounts).

   Copies of all applications are attached to this policy. Statements made in any application will be relied upon by us as being true and complete to the best of the knowledge and belief of the persons making them. No statement, unless it is in an application, will be used by us to void this policy or deny a claim. Any change of this policy requires the written consent of an officer of Amoco Life. A new schedule page will be given to you for any policy changes.

   You may request a complete proposal of future policy cash values and death benefits from us at any time. We may charge a fee not to exceed $3 for the preparation of such a proposal.

2. INCONTESTABILITY—We will not contest the validity of this policy after it has been in force during the lifetime of the Primary Insured for two years after the policy effective date. We will not contest payment of any death benefit for a Secondary Insured after the coverage has been in force for two years during the lifetime of the Secondary Insured. We will not contest any increased benefits later than two years after the effective date of such increased benefits.

   If this policy is reinstated, this provision will be measured from the reinstatement date.

3. MISSTATEMENT OF AGE OR SEX—If the age or sex of an insured has been misstated, we will adjust the policy values to those based on correct monthly deductions since the policy effective date. Monthly deductions are defined in Section 24.

4. POLICY DATES—The following dates are measured from the policy effective date:
   A. policy months;
   B. policy years;
   C. policy anniversaries; and
   D. the maturity date.

5. CHANGE OF MATURITY DATE—The maturity date may be changed upon written request by the owner. The maturity date may be changed to any policy anniversary after the end of the 10th policy anniversary and prior to the policy anniversary following the Primary Insured's 95th birthday.

6. NONPARTICIPATION—This policy is nonparticipating and will not share in our profits or surplus earnings. We will pay no dividends on this policy.

## Exclusion

7. SUICIDE—The death benefit will not be paid if the Primary Insured's death results from suicide, while sane or insane (in Missouri while sane), within two

10. BENEFICIARY—The beneficiary will receive the death benefit proceeds upon an insured's death. The beneficiary is named in the application and

measured from the reinstatement date.

**Exclusion**

7. SUICIDE—The death benefit will not be paid if the Primary Insured's death results from suicide, while sane or insane (in Missouri while sane), within two years from the policy effective date. Instead, we will return the sum of the premiums paid less any policy loan and any partial surrenders. There will be a deduction from the returnable premium for the total cost of insurance on any person insured under this policy other than the Primary Insured.

If there are any increases to the specified amount, a new two-year period will apply to each increase beginning on the date of each increase. The amount payable for increases will be the costs of insurance for each increase.

If a Secondary Insured commits suicide, while sane or insane (in Missouri while sane), within two years from the effective date of the specified amount or any increase in coverage for the Secondary Insured, we will return the costs of insurance for such coverage.

If this policy is reinstated, this provision will be measured from the reinstatement date.

**Policyowner and Beneficiary**

8. OWNERSHIP—While the Primary Insured is alive, all rights in this policy belong to the owner. All of the owner's rights in this policy belong to the estate of the owner if the owner dies before the Primary Insured. Owner means the owner identified in the application or a successor in interest or absolute assignee. A change of owner is binding on us only after notice of the change is filed at our Home Office.

9. ASSIGNMENTS—If you have reserved the right to change the beneficiary, you may change the ownership of this policy. You may also assign this policy as collateral. The right of any beneficiary will be subject to a collateral assignment. If you have not reserved the right to change the beneficiary, a collateral assignment or a change of ownership may be made only by joint request from you and the beneficiary.

We are not responsible for the validity of any assignment. No assignment will be binding on us until we record and acknowledge it.

10. BENEFICIARY—The beneficiary will receive the death benefit proceeds upon an insured's death. The beneficiary is named in the application and may be changed as described in the Beneficiary Change provision. Unless otherwise provided in this policy, the rights of a beneficiary who dies before an insured will transfer to you.

11. BENEFICIARY CHANGE—You may change the beneficiary at any time before the insured dies by providing written notice to us. Any change must be recorded by us. The change will take effect on the date the notice is signed by you. We will not be liable for any payments we make or actions we take before the change is recorded.

**Premiums and Reinstatement**

12. CONSIDERATION—The consideration for this policy is the application and the payment of the Initial Premium.

13. INITIAL PREMIUM—The Initial Premium is the premium paid on or before delivery of this policy. The amount of the Initial Premium is shown on Page 3.

14. PLANNED PERIODIC PREMIUMS—Premium payments are flexible; you may choose the amount and frequency of payments. Changes in frequency and increases or decreases in amount of planned periodic premium payments may be made by you. We reserve the right to limit the amount of any increase. This limit is shown on Page 4. If the planned periodic premium stops, monthly deductions from your cash value (Provisions 23 and 24) will continue and your policy will remain in force subject to the Grace Period Provision 16.

The amount and frequency of planned periodic premiums are shown on Page 3. The actual amount and frequency of premium payments will affect the cash values and the amount and duration of insurance coverage. Premiums may be paid annually, semi-annually, quarterly, or monthly. If you choose a monthly payment plan, your monthly premium payment must be at least $25. A receipt signed by an officer will be provided.

**Premiums and Reinstatement (Continued)**

15. UNSCHEDULED PREMIUMS—Additional premium payments may be made by the owner at any time prior to the maturity date. We reserve the right to limit the number and amount of additional premium payments. These limits are shown on Page 4.

16. GRACE PERIOD—If the cash value, less any policy loan, on a monthly deduction day is less than the monthly deduction for the policy month to follow, a grace period of 61 days will be given for the payment of enough premium to cover the monthly deduction. Notice of such premium will be mailed to you at the beginning of the grace period.

    If the premium is not paid within the grace period, all insurance will terminate without value at the end of the 61-day period. If an insured dies during the grace period, the death benefit will be paid but will be reduced by the premium needed to cover the monthly deductions through the month of death.

17. TERMINATION—All coverage for the Primary Insured will terminate when any one of the following events occur:
    A. The owner requests that coverage terminate. The termination date will be the first monthly deduction day after the request is received;
    B. the Primary Insured dies;
    C. the policy matures; or
    D. the grace period ends.

    The Secondary Insured's coverage will terminate on the termination of the policy or on the policy anniversary following the Secondary Insured's 95th birthday, whichever occurs first.

18. REINSTATEMENT—If this policy terminates as provided in the Grace Period provision, it may be reinstated by the owner at any time within five years after the date of termination. Reinstatement is subject to:
    A. receipt of evidence of insurability satisfactory to us for all persons to be insured under the reinstated policy;
    B. payment of a minimum premium sufficient to keep the policy in force for two months; and
    C. payment or reinstatement of any policy loan secured by this policy which existed on the date of termination.

(Continued)

    B. All requests for an increase in insurance for the Primary Insured or a Secondary Insured must be applied for on a supplemental application and

**Death Benefit and Death Benefit Options**

19. DEATH BENEFIT—
    Death of Primary Insured:
    Option 1—The death benefit will be the greater of (a) the specified amount on the date of death or (b) the applicable percentage of cash value on the date of death.

    Option 2—The death benefit will be the greater of (a) the specified amount on the date of death plus the cash value on the date of death or (b) the applicable percentage of cash value on the date of death.

    The applicable percentage of cash value is:
    A. 140 percent of cash value if the primary insured's attained age last birthday at the beginning of the policy year is 40 or less; or
    B. 140 percent of cash value reduced (but not below 105 percent) by one percent for each year the primary insured's attained age last birthday at the beginning of the policy year exceeds age 40.

    The death benefit will be reduced by any policy loan and any premium needed as provided by the Grace Period provision.

    Death of Secondary Insured:
    The death benefit will be the specified amount for the Secondary Insured on the date of death.

20. DEATH BENEFIT CHANGES—At any time after the first policy year, the death benefit may be changed upon your written request, subject to the following conditions:
    A. Any decrease will go into effect on the monthly deduction day on or following the date we receive the request. The specified amount remaining in force after any requested decrease must be at least as great as the following:
       1. $10,000 on the life of the Primary Insured;
       2. $10,000 on the life of a Secondary Insured if coverage is provided.

    The effective date of a reinstated policy will be the monthly deduction day coincident with or next following the date we approve the application for reinstatement.

    C. the net premium received since the prior monthly deduction day; minus
    D. the monthly deduction for the month preceeding

reinstated policy;

B. payment of a minimum premium sufficient to keep the policy in force for two months; and

C. payment or reinstatement of any policy loan secured by this policy which existed on the date of termination.

lowing the date we approve the application for reinstatement.

(Continued)

B. All requests for an increase in insurance for the Primary Insured or a Secondary Insured must be applied for on a supplemental application and will be subject to evidence of insurability satisfactory to us. An increase will go into effect on the date shown on a supplemental policy schedule.

C. If you request to change from Death Benefit Option 2 to Option 1, the specified amount will be increased by the cash value. The new specified amount will be effective on the monthly deduction day on or following the date we receive the request.

D. If you request to change from Death Benefit Option 1 to Option 2, the specified amount will be decreased by the amount of the cash value. The new specified amount will be effective on the monthly deduction day on or following the date we receive the request.

21. INSURANCE FOR SECONDARY INSURED—If insurance is not in force on the life of a Secondary Insured, such insurance may be applied for by supplemental application. Approval of the application for insurance will be subject to evidence of insurability satisfactory to us. The insurance will go into effect on the date shown on a supplemental policy schedule.

**Policy Values**

22. NET PREMIUM—The net premium is the premium paid less a percentage of premium charge. The percentage of premium charge is guaranteed not to exceed 9% of the premium paid. The percentage of premium charge for your policy is shown on Page 3.

23. CASH VALUE—The cash value on the policy effective date is the Initial Premium less the percentage of premium charge. The monthly deduction day is shown on Page 3.

On each monthly deduction day while this policy is in force, but not under the Special Paid-Up Option, the cash value is equal to:

A. the cash value on the prior monthly deduction day; plus

B. one month's interest on A; plus

C. the net premium received since the prior monthly deduction day; minus

D. the monthly deduction for the month preceeding the monthly deduction day; minus

E. one month's interest on D.

On any day between monthly deduction days, the cash value will reflect any premiums paid and time elapsed since the prior monthly deduction day.

24. MONTHLY DEDUCTION—The monthly deduction for a policy month is equal to:

A. the cost of insurance and cost for any policy riders for each person insured during the policy month; plus

B. the first-year monthly expense charge shown on Page 3. (This deduction applies only to the first 12 policy months);

C. the renewal year monthly expense charge shown on Page 3. (This deduction applies after the first 12 policy months.)

25. INTEREST RATE—The guaranteed interest rate used in calculating cash values is .36748% per month, compounded monthly (the same as 4½% compounded yearly). An interest rate exceeding the guaranteed rate can be used at our option. If this interest rate is determined from an outside index, the index and method of calculation are shown on Page 4. We can apply a different rate of interest to that portion of the cash value which equals the amount of an outstanding policy loan, but it cannot be less than .36748% per month.

26. COST OF INSURANCE—The cost of insurance is determined on each monthly deduction day.

The cost of insurance for the Primary Insured is computed as follows:

A. If the death benefit on the monthly deduction day is the specified amount, (Option 1(a)), the cost of insurance is equal to:

1. the specified amount divided by 1.0036748; minus

2. the cash value as of the prior monthly deduction day; the difference being multiplied by

3. the cost of insurance rate.

Policy Values
(Continued)

B. If the death benefit on the monthly deduction day is the specified amount plus the cash value, (Option 2(a)), the cost of insurance is equal to:
1. the specified amount divided by 1.0036748; multiplied by
2. the cost of insurance rate.

C. If the death benefit on the monthly deduction day is the applicable percentage of the cash value, (Options 1(b) and 2(b)), the cost of insurance is equal to:
1. the applicable percentage of cash value divided by 1.0036748; minus
2. the cash value as of the prior monthly deduction day; the difference being multiplied by
3. the cost of insurance rate.

The cost of insurance for each Secondary Insured is determined by multiplying the Secondary Insured's specified amount by the cost of insurance rate.

27. COST OF INSURANCE RATE—The cost of insurance rate for each insured is based on the sex, attained age and rate classification of the insured. During any policy year, the insured's attained age on an age last birthday basis as of the last policy anniversary will be used. We can use cost of insurance rates that are lower than the guaranteed rates. These lower rates will be determined at the beginning of each policy year and will be guaranteed for the next policy year. The rates will be applied uniformly by class. The monthly guaranteed cost of insurance rates are shown in the Cost of Insurance and Paid-Up Whole Life Table on Page 5. The guaranteed cost of insurance rates are based on the 1958 Commissioners Standard Ordinary Mortality Table, Age Last Birthday.

28. ANNUAL REPORT—At least once each year, we will send you a report which shows;
A. the current cash value;
B. premiums paid and charges made since the last report;
C. projected cash values, on both a guaranteed and then current basis;

D. the amount of any outstanding policy loan; and
E. partial surrenders paid to you since the last report.

29. BASIS OF COMPUTATIONS—Guaranteed cash values are equal to or greater than minimum cash values based on:
A. the Commissioners 1958 Standard Ordinary Mortality Table; and
B. interest at 4½% compounded yearly.

The mortality table is on an Age Last Birthday basis.

Reserves and net single premiums are based on:
A. the Commissioners 1958 Standard Ordinary Mortality Table; and
B. interest at 4½% compounded yearly.

The mortality table is on an Age Last Birthday basis. Reserves are calculated using a modified preliminary term method but are not less than the reserves calculated according to the Commissioners Reserve Valuation Method.

**Discontinuance of Premiums and Surrender**

30. SPECIAL PAID-UP LIFE INSURANCE OPTION—You may request that your policy be changed to paid-up whole life on the Primary Insured. This paid-up whole life insurance:
A. will begin on the date to which premiums are paid; and
B. will be for the amount of insurance that the cash value, less any policy loan, will buy when applied as a net single premium at the Primary Insured's attained age in completed years and months, provided it is not less than $1,000 nor greater than the Primary Insured's Death Benefit less any policy loan on the date granted.

A table of Paid-Up Whole Life Available Per $1.00 Cash Value factors is shown on Page 5. The paid-up amount is the cash value, less any policy loan, times the factor from the table. The factor depends on the Primary Insured's attained age and sex.

The insurance provided by the Special Paid-Up Insurance Option will not include the additional benefit riders, if any, attached to this policy.

premium payments are discontinued and if no all scheduled premium payments are made, the insurance will continue until:
A. the cash value less any policy loan is insufficient to cover the monthly deduction; or
B. the maturity date, whichever occurs first.

premium classification of the Secondary Insured. No evidence of insurability will be required. Benefits added to this policy by rider cannot be converted without our consent. The new policy may be any permanent plan of insurance issued by us at the time of conversion.

then current basis;

The insurance provided by the Special Paid-Up Insurance Option will not include the additional benefit riders, if any, attached to this policy.

premium payments are discontinued and if no unscheduled premium payments are made, the insurance will continue until:

A. the cash value less any policy loan is insufficient to cover the monthly deduction; or

B. the maturity date, whichever occurs first.

32. SURRENDER—Upon written request, you may surrender this policy for its cash value less any policy loan, and less any contingent deferred sales charge. The amount of the contingent deferred sales charge is stated on Page 4. Surrender may occur at any time during the lifetime of the Primary Insured and before the maturity date. If this policy is surrendered, all insurance in force will terminate on the monthly deduction day next following receipt of the surrender request. We may defer payment of the cash value for six months.

33. PARTIAL SURRENDER—Upon written request, you may partially surrender this policy for cash at any time for an amount not to exceed the cash value less any policy loan. The partial surrender amount will be deducted from the cash value. The death benefit will be reduced by the amount of the partial surrender. The specified amount remaining in force after any partial surrender must be at least as great as the minimum required by this policy.

We will deduct the greater of:

A. a fee of $25.00; or

B. a contingent deferred sales charge from the cash value for each partial surrender. The amount of the contingent deferred sales charge is stated on Page 4. We reserve the right to limit the number of partial surrenders in a policy year. We may defer payment of the partial surrender amount for six months unless such surrender is for the purpose of paying premiums to us.

### Conversion Privilege

34. CONVERSION OF INSURANCE ON SECONDARY INSURED—You may convert the insurance on the Secondary Insured if:

A. the insurance has been in force at least one year;

B. the Secondary Insured is not over 65 years old;

C. the insurance stops for a cause other than lack of premium payment;

D. a request is received in writing; and

E. the request is received within 31 days of the date insurance stops.

premium classification of the Secondary Insured. No evidence of insurability will be required. Benefits added to this policy by rider cannot be converted without our consent. The new policy may be any permanent plan of insurance issued by us at the time of conversion.

### Loans

35. POLICY LOANS—You may borrow part or all of the cash value at any time while this policy is in force. The most you can borrow is an amount which when added to any existing policy loan does not exceed the cash value on the date of the loan. The amount borrowed plus interest to the next policy anniversary will be added to any existing loan and the total will become the new loan balance. The loan will be made upon the sole security and proper assignment of this policy. We may defer making a policy loan for six months.

36. LOAN INTERST—Interest is payable in advance at the Loan Interest Rate stated on Page 3, or at any lower rate established by us for any period during which the loan is outstanding. The loan interest rate is guaranteed not to exceed the maximum amount allowed by your state. We will give notice to you and to any assignee recorded at our Home Office of any change in interest rate. This notice will be given at least 30 days before the effective date of any increase in interest rate on loans outstanding 40 or more days.

Interest will be due and payable annually on the policy anniversary date. Interest not received when due, or within 30 days of the date due, will be added to the loan principal and bear interest on the same terms.

37. LOAN REPAYMENTS—All or part of a loan may be repaid at any time while this policy is in force. A loan which existed at the expiration of the grace period may not be repaid unless this policy is reinstated. Failure to repay any loan or to pay interest will not terminate this policy unless the total loan equals or exceeds the cash value. Each loan payment must be at least $25.00.

### Optional Methods of Payment of Policy Proceeds

38. PROCEEDS—Proceeds means the amount payable on:

A. the maturity date of this policy;

B. the surrender of this policy prior to the maturity date; or

C. upon the death of an insured.

**Optional Methods of Payment of Policy Proceeds (Continued)**

The proceeds payable on the death of the Primary Insured will be the Primary Insured's death benefit less any policy loan. The proceeds payable on the death of the Secondary Insured will be the Secondary Insured's death benefit. If this policy is surrendered, the proceeds will be the cash value less any policy loan and less any contingent deferred sales charge. On the maturity date, the proceeds will be the cash value less any policy loan.

39. PAYMENT OF PROCEEDS—The proceeds are subject first to any indebtedness to us and then to the interest of any assignee of record. Unless otherwise provided, the Secondary Insured's death benefit will not be subject to any indebtedness to us. Payments to satisfy any indebtedness to us and any assignee will be paid in one sum. Unless a settlement option is elected, the balance of any death benefit will be paid in one sum to the beneficiary. If no beneficiary survives a deceased insured, the proceeds will be paid in one sum to you, if living; otherwise to your estate.

40. GENERAL CONDITIONS—While the insured (Primary or Secondary) is alive, you may choose to have the proceeds paid in one sum or under any of the optional methods for payment. These methods are shown in Provision 41. Payees must be individuals who receive payments in their own behalf unless otherwise agreed to by us. Unless you have directed otherwise, the payee may choose another method for payment. Any method chosen will be effective when we acknowledge it. The method chosen will no longer be effective if the beneficiary or beneficiaries:

(a) die before the Insured (Primary or Secondary); or

(b) are changed after the method is chosen.

Proof of age or survival of the payee may be required by us.

Unless you have directed us not to change the method of payment, the payee may:

(a) change or name the persons who are to receive any proceeds remaining at the death of the payee;

(b) withdraw all or part of any proceeds remaining under Method 1; or

(c) withdraw the present value of any remaining payments under Method 2 or 3.

The guaranteed rate of interest used in these optional methods is 3%. Our Board of Directors may declare additional interest to be paid or credited annually for Method 1, 2 or 3.

When the last named payee dies, we will pay to the estate of that payee any amount on deposit, or the then present value of any remaining guaranteed payments. The present value will be based on interest at 3% unless Method 4 shown in Provision 41 has been chosen and basis (ii) has been used to compute the monthly income. If basis (ii) has been used, the present value will be based on the rate used in a Single Premium Immediate Annuity Policy available from us at the time the method becomes effective.

41. METHODS FOR PAYMENT

Method 1 — Proceeds Held on Deposit at Interest — While the proceeds are held by us, we will annually:
(a) pay interest to the payee; or
(b) add interest to the proceeds.

Method 2 — Income of a Specified Amount — The proceeds will be paid in installments of a specified amount until the proceeds, with interest, have been fully paid.

Method 3 — Income for a Specified Period — The proceeds will be paid in installments for the number of years chosen. The monthly incomes for each $1,000 of proceeds, shown in the following table, include interest. We will provide the income amounts for payments other than monthly upon request.

| Years Chosen | Monthly Income | Years Chosen | Monthly Income | Years Chosen | Monthly Income |
|---|---|---|---|---|---|
| 1 | $84.47 | 8 | $11.68 | 15 | $6.87 |
| 2 | 42.86 | 9 | 10.53 | 16 | 6.53 |
| 3 | 28.99 | 10 | 9.61 | 17 | 6.23 |
| 4 | 22.06 | 11 | 8.86 | 18 | 5.96 |
| 5 | 17.91 | 12 | 8.24 | 19 | 5.73 |
| 6 | 15.14 | 13 | 7.71 | 20 | 5.51 |
| 7 | 13.16 | 14 | 7.26 | | |

Method 4 — Lifetime Income — The proceeds will be paid as a monthly income for as long as the payee lives. The following guarantees are available:

Guaranteed Period — The monthly income will be paid for a minimum of 10 years and as long thereafter as the original payee lives; or

Guaranteed Amount — The monthly income will be paid until the sum of all payments equals the proceeds placed under this method and as long thereafter as the original payee lives.

The monthly income will be the amount computed using one of the following bases: (i) the Lifetime Monthly Income Table on Page 13; or, if more favorable to the payee, (ii) our then current lifetime monthly income rates for payment of policy proceeds.

Upon request and if available, we will provide lifetime income amounts for payments less fre-

PREMIUM AND DEATH BENEFIT ENDORSEMENT

The guaranteed rate of interest. ..ed in these op-
tional methods is 3%. Our Board of Directors may
declare additional interest to be paid or credited
annually for Method 1, 2 or 3.

monthly incon .. ates for payment of policy
proceeds.

Upon request and if available, we will provide
lifetime income amounts for payments less fre-

## PREMIUM AND DEATH BENEFIT ENDORSEMENT

The policy to which this endorsement is attached is amended as follows:

1. **DEATH BENEFIT:**  The definition of the death benefit as the applicable
percentage of cash value of Provision 19 on page 8 of the policy is amended
as shown in the following table:

| ATTAINED AGE | APPLICABLE PERCENTAGE OF CASH VALUE | ATTAINED AGE | APPLICABLE PERCENTAGE OF CASH VALUE | ATTAINED AGE | APPLICABLE PERCENTAGE OF CASH VALUE |
|---|---|---|---|---|---|
| 0 - 40 | 250% | 54 | 157% | 68 | 117% |
| 41 | 243 | 55 | 150 | 69 | 116 |
| 42 | 236 | 56 | 146 | 70 | 115 |
| 43 | 229 | 57 | 142 | 71 | 113 |
| 44 | 222 | 58 | 138 | 72 | 111 |
| 45 | 215 | 59 | 134 | 73 | 109 |
| 46 | 209 | 60 | 130 | 74 | 107 |
| 47 | 203 | 61 | 128 | 75-90 | 105 |
| 48 | 197 | 62 | 126 | 91 | 104 |
| 49 | 191 | 63 | 124 | 92 | 103 |
| 50 | 185 | 64 | 122 | 93 | 102 |
| 51 | 178 | 65 | 120 | 94 | 101 |
| 52 | 171 | 66 | 119 | 95 | 100 |
| 53 | 164 | 67 | 118 | | |

2. The UNSCHEDULED PREMIUMS Provisions on page 8 of the policy is amended as
follows:

   Additional premium payments may be made by the owner at any time.  We
reserve the right to:
   1.)   limit the number and amount of premium payments;
   2.)   refuse additional premium payments; and
   3.)   request evidence of insurability prior to processing any additional
         premium payment

AMOCO LIFE INSURANCE COMPANY

_____
President

_____
Secretary

ULE-103

## SECONDARY INSURED ENDORSEMENT

The policy to which this endorsement is attached is amended as follows:

1. SECONDARY INSURED:
   (a) The Primary Insured's lawful spouse for whom:
       1. application is made; and
       2. coverage is provided under the policy
   (b) The Primary Insured's unmarried children (including adopted children):
       1. over age 1 month and under age 25;
       2. who are dependents of the Primary Insured; and for
       3. whom application is made and coverage is provided under the policy.

2. TERMINATION:  Coverage under the policy for a Secondary Insured terminates on the first premium due date after the occurrence of the earlier of the following:
   (a) the date the individual ceases to qualify as a Secondary Insured; or
   (b) the date the policy terminates.

3. CONVERSION OF COVERAGE:  Provision 34 of the policy is amended as follows:
   A. CONVERSION AT TERMINATION:  If the Secondary Insured's coverage terminates under provision 2 above, the insurance on the Secondary Insured may be converted if:
      1. a request is received in writing;
      2. the request is received within 31 days of the date insurance stops.
   B. CONVERSION DURING COVERAGE:  A Secondary Insured's coverage under the policy may be converted at any time prior to termination if:
      1. the insurance has been in force at least one year;
      2. the Secondary Insured is not over 95 years old;
      3. a request is received in writing.

Conversion will not be allowed if coverage ceases for lack of premium payment.

The new policy may be any form of permanent life insurance being issued by us at that time.  The face amount of the new policy may be for an amount up to the Specified Amount at the time of conversion.  The premium rate will be one used by us for the sex, attained age and premium classification of the Secondary Insured. No evidence of insurability will be required.  Benefits added to the policy by rider cannot be converted without our consent.

4. BENEFICIARY: Absent a written request, the beneficiary of the Secondary Insured is the Primary Insured.

AMOCO LIFE INSURANCE COMPANY

_____              _____
President                                            Secretary

ULE-104

# LEVEL TERM LIFE INSURANCE RIDER-PRIMARY INSURED

**BENEFIT** — When we receive proof that the Primary Insured died while this rider was in force, we will pay to the beneficiary the amount shown for this benefit on Page 3. This amount will be in addition to all other benefits provided by this policy.

**CONVERSION PRIVILEGE** — This rider may be converted to a new policy on the life of the Primary Insured for any form of whole life or endowment insurance being issued by us on the effective date of conversion. Conversion may be made at any time while this rider is in force, without providing evidence of insurability, on receipt at the Home Office of this policy, an application for conversion signed by the Owner and payment of the premium.

The new policy will be issued as of the date of conversion, on a form and at the rate then used by us for the Primary Insured's attained age for the same risk classification as this policy. The face amount of this new policy can not exceed the benefit amount of this rider. Any premium paid for this rider beyond the effective date of conversion will be refunded.

If this policy contains any rider benefits, the benefits may be included in the new policy only at our option. Premiums on the new policy will not be waived by reason of any disability existing at the time of conversion.

**INCONTESTABILITY** — We will not contest the validity of this rider after it has been in force during the lifetime of the Primary Insured for two years from its date of issue. The date of issue of this rider is the policy effective date or the effective date shown for this rider on Page 3 if added later.

**SUICIDE EXCLUSION** — If the Primary Insured's death results from suicide, while sane or insane, (in Missouri, while sane) within two years from the effective date for this rider, the amount payable will be limited to the sum of the premiums paid for this rider.

**TERMINATION** — This rider will terminate:
- (a) on the expiration date shown for this rider on Page 3: or
- (b) when the policy terminates, if earlier.

This rider may also be terminated by written request of the owner and return of this policy to us. The termination will be effective on the monthly deduction day on or following the date we receive the request. The monthly deduction for this policy will then be reduced by the monthly cost of benefit for this rider.

**PREMIUMS** — The monthly cost of benefit for this rider is the benefit amount shown on Page 3 times the Cost of Insurance Rate defined in Provision 27 on page 10. The monthly cost of benefit will be deducted from the cash value of this policy on the monthly deduction day.

**GENERAL** — If you have chosen a method for payment of the policy proceeds, that method will apply to any amount payable under this rider unless you have specified otherwise.

This rider is a part of the policy to which it is attached. It is subject to all of the policy provisions which are not inconsistent with the rider provisions.

AMOCO LIFE INSURANCE COMPANY

President                Secretary

LR-113

## CERTIFICATE OF ASSUMPTION
1059-52-002

Primary Insured:  LYLE W HUNTER
Policy/Certificate Number: 6278301218

This certificate is to be attached to and become a part of your insurance policy/certificate issued by Amoco Life Insurance Company ("Amoco Life ").

LYLE W HUNTER
3941 VOLTAIRE ST
SAN DIEGO CA 92107

Effective the 31st day of January, 1991, as a result of the merger of Amoco Life into NACOLAH Life Insurance Company of Texas, a Texas stock life insurance company ("NACOLAH Texas"), the above numbered policy/certificate issued by Amoco Life is hereby assumed by NACOLAH Texas, in accordance with the terms and conditions of your policy/certificate and subject to all defenses and offsets available to Amoco Life on such date.

There have been no changes in your coverage and, assuming that all premiums due have been or are timely paid, your policy/certificate is in full force and effect just as it was before the above-referenced merger took place. There is no change with regard to the premiums that are payable, the manner in which claims are handled and processed, or the procedure to be followed when your coverage comes up for renewal. The payment of premiums (if due) or the acceptance of benefits (if any) under the above numbered policy/certificate will constitute acknowledgement and acceptance of the assumption described in this certificate.

NACOLAH Texas has principal administrative offices (where all premiums and other correspondence concerning your policy/certificate should now be directed) located at 222 S. Riverside Plaza, Chicago, IL 60606. A toll free number is available for your convenience with regard to answers or service you may need on your policy/certificate. It is 1-800-877-9190.

IN WITNESS WHEREOF, NACOLAH Life Insurance Company of Texas has caused this Certificate of Assumption to be signed by its President and attested by its Secretary, both being duly authorized to do so, the 31st day of January, 1991.

ATTEST:

NACOLAH LIFE INSURANCE COMPANY
OF TEXAS

_____
SECRETARY

_____
PRESIDENT

**THIS CERTIFICATE BECOMES A PART OF YOUR POLICY/CERTIFICATE
AND SHOULD BE ATTACHED TO IT**

L-2356

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
04/29/2008
CT Log Number 513370119

**TO:**   Stephen Horvat
North American Company for Life & Health Insurance
Law Department, 525 West Van Buren
13th Floor
Chicago, IL 60607-

**RE:**   **Process Served in California**

**FOR:**   North American Company for Life and Health Insurance (Domestic State: IL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Lyle W. Hunter, Pltf. vs. North American Company for Life and Health Insurance, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Notice(s), Stipulation Form, Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | San Diego County- San Diego, Superior Court, CA<br>Case # 37200800080032CUBCCTKL |
| **NATURE OF ACTION:** | Insurance Litigation - Breach of Contract - Policy benefits claimed for life insurance |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/29/2008 at 14:15 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Dena M. Acosta<br>North County Law Firm<br>914-A North Coast Highway 101<br>Encinitas, CA 92024<br>760-633-4060 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Priority Overnight , 791055973880 |
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street<br>Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

0 Served            4/29/08

0 30 days t        5/29/08
appeal
remove

0 29th day         5/28/08

APR 3 0 2008

L

Page 1 of  1 / MV

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

1  SUSAN E. BASINGER, ESQ. (Bar No. 140864)
   basinger@higgslaw.com
2  HIGGS, FLETCHER & MACK LLP
   401 West "A" Street, Suite 2600
3  San Diego, CA 92101-7913
   TEL: 619.236.1551
4  FAX: 619.696.1410

5  Attorneys for Defendant
   NORTH AMERICAN COMPANY FOR
6  LIFE AND HEALTH INSURANCE

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10  LYLE W. HUNTER,                CASE NO. **08 CV 0939 DMS NLS**

11              Plaintiff,         **PROOF OF SERVICE**

12  v.

13  NORTH AMERICAN COMPANY
    FOR LIFE AND HEALTH
14  INSURANCE, an Illinois Corporation,
    and DOES 1-50, inclusive,
15
                Defendants.
16

17

18          I, the undersigned, declare that:

19          I am over the age of 18 years and not a party to the case; I am employed in the County of

20  San Diego, California, and my business address is 401 West A Street #2600, San Diego,

21  California 92101 7908.

22          On May 28, 2008, I served a copy, with all exhibits (if any), of the attached **NOTICE OF**

23  **REMOVAL OF ACTION UNDER 28 U.S.C. SECTIONS 1441 AND 1446 (DIVERSITY);**

24  **LODGMENT OF STATE COURT FILE; DEFENDANT'S DEMAND FOR JURY TRIAL**

25  on the interested parties in this action, by placing true copies thereof in a separate envelope

26  addressed to each addressee, respectively, as follows:

27  ///

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

                                                    Case No.

1

Anton C. Gerschler, Esq.                    Attorney for Plaintiff
Dena M. Acosta, Esq.                        Phone 760.633-4060;
North County Law Firm                       Fax 760.633-4066
914-A North Coast Highway 101
Encinitas, CA 92024

2

3

4

X____ (BY MAIL):  I deposited such envelope in the mail at San Diego, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit or mailing in affidavit. (CCP §§ 1013, 2015.5.)

5

6

7

8

_____ (BY MAIL & E-MAIL):    I deposited such envelope in the mail at San Diego, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit or mailing in affidavit. (CCP §§ 1013, 2015.5.)  Further, notice shall be electronically mailed pursuant to the Southern District of California, Electronic Case Filing Administrative Policies and Procedures, on the parties as indicated above.

9

10

11

12

13

_____ (FACSIMILE SERVICE):    As evidenced by the attached facsimile transmission report, I faxed the above-described documents to each addressee named herein.  The facsimile machine I used complied with California Rules of Court, Rule 2003, and no error was reported by machine.  Pursuant to California Rules of Court, rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration. (CCP §§ 1013, 2015.5; Cal. Rules of Court, Rule 2008(e).)

14

15

16

Executed on May 28, 2008, at San Diego, California.

17

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

18

19

20

21

22

_Linda McMullen_
LINDA McMULLEN

23

24

25

26

27

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

2

Case No.

✎ JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
LYLE W. HUNTER

## DEFENDANTS
NORTH AMERICAN COMPANY LIFE AND HEALTH INSURANCE, etc.

2008 MAY 28 PM 2: 45

'08 CV 0939 DMS NLS

**(b)** County of Residence of First Listed Plaintiff  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Anton C. Gerschler, Esq.
NORTH COUNTY LAW FIRM
914-A North Coast Highway 101
Encinitas, CA  92024
760.633.4060

Attorneys (If Known)
Susan E. Basinger, Esq.
HIGGS, FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
San Diego, CA  92101
619.236.1551

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)     and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 480 Consumer Credit |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 490 Cable/Sat TV ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities- Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities- Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. section 1441 - Removal from State Court
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23     DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____     DOCKET NUMBER _____

DATE
May 28, 2008
SIGNATURE OF ATTORNEY OF RECORD
*Susan E. Basinger*     SUSAN E. BASINGER

FOR OFFICE USE ONLY
RECEIPT # 151520   AMOUNT $350—   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___
MB 05/28/08

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 151320    — MB

**May 28, 2008
14:46:35**

**Civ Fil Non-Pris**
USAO #.: 08CV0939 CIVIL FILING
Judge..: DANA M SABRAW
Amount.:                    $350.00 CK
Check#.: BC22684

**Total—> $350.00**

FROM: LYLE W. HUNTER VS. NORTH
      NORTH AMERICAN CO LIFE AND
      HEALTH INSURANCE